**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JONATHAN TYLER, AS ASSIGNEE OF
MICHAELA JUERGENSEN,

      Plaintiff,

v.

     Case No. 25-cv-4024-JWB-JBW

SHELTER MUTUAL INSURANCE COMPANY,

      Defendant.

**MEMORANDUM AND ORDER**

In this removed insurance breach of contract action, Plaintiff Jonathan Tyler ("Tyler") seeks payment from Defendant Shelter Mutual Insurance Company's ("Shelter") for the full amount of the state court judgment awarded him for personal injury damages arising from a motor vehicle collision with Shelter's insured, Michaela Juergensen ("Juergensen"). This matter is before the Court on Tyler's Motion to Quash the Deposition of Florin Nicolae, M.D. (Dkt. 75) ("Motion to Quash"). Tyler requests the Court quash Shelter's Notice (Dkt. 73) for the deposition of Dr. Nicolae, who testified as Tyler's treating physician and non-retained medical expert witness at the bench trial in the state court case and who Tyler identified as a non-retained expert in his Designation of Expert Witnesses (Dkt. 66) filed in this case. As explained below, the Motion to Quash is denied.

## I.    Background

### A.    Underlying Case

On July 27, 2021, Tyler filed a lawsuit against Juergensen in Shawnee County, Kansas District Court alleging personal injuries from a December 15, 2019 automobile accident arising from Juergensen's negligent conduct and claiming damages in excess of $1 million (Case No. SN-

2021-CV-000402) (hereinafter "Underlying Case"). At the time of the accident, Juergensen had a policy of insurance through Shelter that contained liability coverage limits of $50,000. In response to the Underlying Case, Shelter provided Juergensen a defense pursuant to the policy and retained the law firm of Larson & Blumreich to represent and defend Juergensen.

After nearly three years of litigation, Juergensen entered into a Contract to Limit Recovery/Covenant Not to Execute and Assignment of Claims assigning her right to pursue a claim for breach of contract arising from bad faith and negligence against Shelter to Tyler in exchange for his agreement not to execute any judgment in excess of her insurance policy limits against Juergensen or her personal assets. Juergensen and Tyler also agreed to have liability and damages determined by a bench trial. Shelter was not aware of the covenant not to execute or the bench trial.

On May 2, 2024, Shawnee County District Judge Thomas G. Luedke held a bench trial. Tyler, his wife, and Tyler's treating physician, Dr. Nicolae, testified at the bench trial. Tyler also submitted several exhibits, including his pre-accident and post-accident medical records, photographs of the scene of the accident, and his medical bills (which exceeded $82,000). By stipulation of the parties, the defense did not object to the introduction of such evidence or testimony. At the conclusion of the bench trial, Tyler requested damages in excess of $1.1 million—which the court took under advisement.

On June 11, 2024, Judge Luedke entered an order following the bench trial finding Juergensen 100% at fault in causing a motor vehicle collision with Tyler and awarding Tyler damages for personal injury in the amount of $712,635.68 ("Judgment").

2

## B.      Current Case

On February 6, 2025, Tyler, as assignee of Juergensen, filed a Petition in the District Court of Shawnee County, Kansas, alleging Shelter failed to act with reasonable care and good faith in handling the personal injury claim, resulting in a breach of contract against Juergensen and exposing itself to liability for the full amount of the judgment. Shelter removed the case to this Court on March 13, 2025.

On January 23, 2026, Tyler filed his Designation of Expert Witnesses (Dkt. 66) disclosing Florin Nicolae, M.D., as a non-retained expert and identifying him as a medical doctor specializing in pain management and Tyler's treating provider. The Designation states:

> Dr. Nicolae has not been specifically consulted concerning this litigation but was designated as a non-retained medical expert witness in *Jonathan Tyler, et al. v. Michaela Juergensen*, Shawnee County Case Number SN-2021-CV000402 (the "Underlying Case") and testified in the bench trial conducted by the Hon. Thomas L. Luedke on May 2, 2024.
>
> At the bench trial, Dr. Nicolae testified in accordance with his medical records concerning Mr. Tyler's injuries, his past treatment, his need for future treatment, causation and prognosis based upon his knowledge, education, training, experience and treatment of Mr. Tyler as his patient, as well as his review of Mr. Tyler's pre-accident and post-accident medical records. While [Tyler] maintains that the Order entered by Judge Luedke on June 11, 2024 in the Underlying Case is a final adjudication on the merits, to the extent that Judge Luedke's findings with regard to Mr. Tyler's injuries, medical causation and damages are permitted to be challenged by Shelter in this subsequent insurer bad faith action, Mr. Tyler proffers and relies upon the testimony provided by Dr. Nicolae during the bench trial on May 2, 2024—the transcript of which is attached hereto as Exhibit A.
>
> Dr. Nicolae may have additional opinions regarding opinions of expert witnesses that may be called on behalf of the Defendant in this action.[1]

---

[1] Pl.'s Designation of Expert Witnesses (Dkt. 66) at 2–3.

3

On February 13, 2026, Defendant filed a Notice (Dkt. 73) to take the deposition of Dr. Nicolae in Topeka, Kansas, on March 23, 2026. Tyler filed his Motion to Quash on February 17, 2026.[2] At the request of Defendant, a discovery conference was held on March 12, 2026.[3]  The Court held in abeyance all unexpired case deadlines and settings and ordered Dr. Nicolae's deposition postponed pending a ruling on the Motion to Quash.

## II.    Legal Standards

Federal Rule of Civil Procedure 26(b)(4) addresses discovery from expert witnesses. Under Rule 26(b)(4)(A), "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial," and "[i]f Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided."[4] By contrast, Rule 26(b)(4)(D) pertains to experts who have been retained or specially employed by a party in anticipation of litigation or to prepare for trial and who are not expected to be called as a witness at trial. A party ordinarily may not, by interrogatories or deposition, discover facts known or opinions held by these experts except as provided in Rule 35(b) (which concerns reports of physical and mental examinations) or upon a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."[5]

---

[2] Shelter argues the Motion to Quash should be denied because Tyler failed to request a pre-motion conference before filing it. The Court will not deny the motion for non-compliance with D. Kan. Rule 37.1(a). Although Tyler did not comply with this Rule, the Court subsequently held a discovery conference on the motion on March 12, 2026.

[3] *See* Minute Entry and Order (Dkt. 84).

[4] Depositions of retained experts not expected to be called as witnesses at trial are governed by Fed. R. Civ. P. 26(b)(4)(D).

[5] Fed. R. Civ. P. 26(b)(4)(D)(i)–(ii).

However, Rule 26(c)(1) permits a party or any person from whom discovery is sought to move for a protective order; and if "on matters relating to a deposition," to file the motion in the court for the district where the deposition will be taken.  The court may, for good cause, issue such protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[6] Rule 26(c)(1)(A)-(H) outlines a number of non-exclusive ways in which the court may tailor a protective order, including forbidding the discovery, "forbidding inquiry into certain matters, or limiting the scope of [] discovery to certain matters."[7] Rule 26(c)'s "good cause" standard is "highly flexible, having been designed to accommodate all relevant interests as they arise."[8] The party seeking a protective order bears the burden to demonstrate good cause for protection. To establish good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[9] The Supreme Court acknowledges trial courts are "in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[10]

Rule 26(b)(2)(C)(iii) also allows a party to file a motion to "limit the frequency or extent of discovery," and the court must limit the proposed discovery if it is determined "outside the scope permitted by Rule 26(b)(1)." Under Rule 26(b)(1), the scope of discovery is limited to what

---

[6] Fed. R. Civ. P. 26(c)(1).

[7] Fed. R. Civ. P. 26(c)(1)(A) and (D).

[8] *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (citation omitted).

[9] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[10] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

is "relevant to any party's claim or defense and proportional to the needs of the case." At the discovery stage, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[11] Information within the scope of discovery "need not be admissible in evidence to be discoverable."[12]

### III.    Tyler Designated and Disclosed Dr. Nicolae as a Non-Retained Expert Whose Opinions May be Presented at Trial

Rule 26(b)(4)(A) permits Shelter to depose Dr. Nicolae if Tyler has identified him as an expert "whose opinions may be presented at trial." Tyler filed his Designation of Expert Witnesses (Dkt. 66) disclosing information regarding "witnesses expected to testify as expert witnesses in this matter." Tyler designated Dr. Nicolae as a non-retained expert and identified him as a medical doctor specializing in pain management and his treating provider. Tyler states in the Designation that Dr. Nicolae has not been specifically consulted concerning this litigation but was designated as a non-retained medical expert witness in the Underlying Case. Tyler's Designation further states "to the extent that Judge Luedke's findings [in the Underlying case] with regard to [Tyler's] injuries, medical causation and damages are permitted to be challenged by Shelter in this subsequent insurer bad faith action, [Tyler] proffers and relies upon the testimony provided by Dr. Nicolae during the bench trial on May 2, 2024." The Designation further states "Dr. Nicolae may have additional opinions regarding opinions of expert witnesses that may be called on behalf of [Shelter] in this action."

---

[11] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[12] Fed. R. Civ. P. 26(b)(1).

Based upon a review of the Designation, the Court finds Tyler has identified Dr. Nicolae as an expert "whose opinions may be presented at trial" in this case. Accordingly, Dr. Nicolae may be deposed by Shelter pursuant to Rule 26(b)(4)(A) unless Tyler shows good cause under Rule 26(c) for a protective order forbidding the deposition or the Court determines the deposition is "outside the scope [of discovery] permitted by Rule 26(b)(1)."[13]

**IV.        Whether Dr. Nicolae's Deposition is Outside the Scope of Rule 26(b)(1) as Not Relevant to the Claims and Defenses in This Case**

Tyler does not invoke Rule 26(c) or make any argument establishing good cause for a protective order prohibiting Shelter from taking Dr. Nicolae's deposition. Instead, Tyler appears to rely upon Rule 26(b)(1) by arguing Dr. Nicolae's deposition is outside the scope of discovery because Shelter is collaterally estopped from challenging the reasonableness of the Judgment in the Underlying Case pursuant to Kansas law, as established in *Glenn v. Fleming*[14] and *Crist v. Hunan Palace*.[15] Tyler argues because Shelter did not defend its insured Juergensen under a reservation of rights and did not intervene in the Underlying Case, Shelter is not allowed to re-litigate liability or damages determinations made in the Underlying Case. Therefore, any information Dr. Nicolae may have regarding Tyler's injuries, treatment, causation, and damages and his trial testimony in the Underlying Case would only be relevant to challenging the reasonableness of the Judgment and would not be relevant to the issues in *this* case. According to Tyler, the relevant issues in this case are limited to whether Shelter was negligent or acted in bad faith in defending Juergensen in the Underlying Case and whether Shelter is liable for the

---

[13] Fed. R. Civ. P. 26(b)(2)(C)(iii).

[14] 247 Kan. 296, 305, 799 P.2d 79, 85 (1990).

[15] 277 Kan. 706, 89 P.3d 573 (2004).

Judgment entered by the state court judge in the Underlying Case following a bench trial. Tyler argues Dr. Nicolae cannot provide any relevant or discoverable information on these issues and therefore his deposition notice should be quashed.

Shelter argues that it should be permitted to depose Dr. Nicolae because his testimony is relevant to multiple affirmative defenses and the Court's determination of reasonableness, collusion, and the binding nature of the Judgment entered in the Underlying Case. Granting Tyler's motion would not only ignore Shelter's defenses and the factual realities of this unique case but would also prematurely litigate Shelter's affirmative defenses without the benefit of a full dispositive motion record. Alternatively, Shelter argues it should be permitted to depose Dr. Nicolae because his testimony is relevant to whether its actions constituted bad faith. If Tyler's theory of bad faith is that Shelter incorrectly determined Tyler's treatment was unrelated to the accident, understanding the basis of Dr. Nicolae's opinions is critical to allow Shelter to fully litigate its defense that its valuation was reasonable. Shelter also argues that *Crist* is inapplicable in this case, Tyler's reliance on *Glenn* to limit discovery is misplaced, the Underlying Case Judgment is not binding, and Shelter is free to litigate the issue of Tyler's injuries. Shelter also argues, procedurally, Tyler's argument that Shelter cannot contest whether the Case Judgment in the Underlying Case is binding seeks to prematurely litigate the merits of affirmative defenses in a discovery motion. Shelter urges the Court to refrain from ruling on this substantive legal issue via a discovery motion.

The Court agrees with Shelter that Tyler is essentially requesting the Court decide a substantive legal issue before allowing discovery on that issue. Here, that issue is whether Shelter is legally prohibited from challenging the reasonableness of the Judgment in the Underlying Case. But the Court need not decide that legal issue to rule on Tyler's Motion to Quash Dr. Nicolae's

deposition notice.[16] Under Rule 26(b)(1), a party is entitled to discovery "relevant to any party's claim or defense." In its answer in this case, Shelter has asserted defenses that the procedure employed to obtain the Judgment in the Underlying Case "does not meet the requirements of *Glenn v. Fleming* and, is therefore, not binding on Shelter" and Tyler's claim is "barred or limited because the damages awarded in the underlying case were not reasonable, necessary, supported by the evidence, or finally determined."[17] Shelter is entitled to seek discovery relevant to these defenses. At the discovery stage, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[18] Under this broad relevance standard, the Court finds Dr. Nicolae likely has information concerning Tyler's injuries, past treatment, need for future treatment, and causation and prognosis. This information directly bears on and would therefore be relevant to the defenses asserted by Shelter in this case. The Court concludes that Dr. Nicolae's deposition is relevant to Shelter's

---

[16] *See Roadbuilders Mach. & Supply Co. v. Sandvik Mining & Constr. USA, LLC,* No. 2:22-CV-2331-HLT-TJJ, 2023 WL 3948534, at *3 n. 16 (D. Kan. June 12, 2023) (concluding the court need not decide the legal issue whether the defendant's unclean hands defense was viable before permitting the defendant to seek discovery on the potential defense); *Marso v. SafeSpeed, LLC,* No. 19-CV-02671-KHV-KGG, 2021 WL 4149075, at *3 (D. Kan. Sept. 13, 2021) ("Generally, a party does not need to put forth evidence of its claims before the Court will allow discovery of those claims."); *Cartwright v. Hoodoo Land Holdings*, No. 2:24-CV-00376-TS-JCB, 2026 WL 45202, at *4 (D. Utah Jan. 7, 2026) ("The point of discovery is to obtain information to prove or disprove a claim or defense; establishing the merits of a claim before being able to seek discovery is not the system."). The issue of whether an insurer is precluded from challenging the reasonableness of an insured's settlement is typically addressed in a motion for summary judgment or motion in limine. *See Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, No. 08-1204-MLB, 2012 WL 4088703, at *3–*6 (D. Kan. Sept. 17, 2012) (denying plaintiff's motion in limine to preclude defendants from challenging the reasonableness of settlements); *Kannaday v. Ball*, No. 09-2255-JWL, 2010 WL 2346368, at *11 (D. Kan. June 9, 2010) (rejecting insurer's argument that insured's settlement agreement was unreasonable and was procured by fraud and collusion as a basis for summary judgment in favor of insured).

[17] Answer (Dkt. 10) ¶¶ 17, 42.

[18] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

defenses asserted in this case and therefore is not "outside the scope [of discovery] permitted by Rule 26(b)(1)." Shelter may depose Dr. Nicolae as contemplated by Rule 26(b)(4)(A).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Quash the Deposition of Florin Nicolae, M.D. (Dkt. 75) is **denied**. Plaintiff Tyler shall make Dr. Nicolae available for his deposition, on a mutually-agreed date and time, on or before **July 31, 2026.**

**IT IS FURTHER ORDERED** that by **July 10, 2026**, the parties shall confer and email to chambers a proposed second amended scheduling order with their new case deadlines and settings.

**IT IS SO ORDERED.**

Dated June 30, 2026, at Kansas City, Kansas.

Jennifer B. Wieland
U. S. Magistrate Judge